Nos. 2--03--1016 & 2--03--1212 cons.

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS,
 ) of Lake County.

)

Plaintiff-Appellee, )

)

v. 
) No. 99--CF--1830

)

RAMON J. DOMINGUEZ, )
 Honorable

)
 James K. Booras,

Defendant-Appellant. )
 Judge, Presiding.

_________________________________________________________________________________

JUSTICE CALLUM delivered the opinion of the court:

Following a jury trial, defendant, Ramon J. Dominguez, was convicted of first-degree murder (720 ILCS 5/9--1(a)(1), (a)(2) (West 1998)) and, following a fitness hearing, was sentenced to 28 years' imprisonment.  This case currently is before this court on defendant's consolidated appeals from the trial court's dismissal of his postconviction petition and from the denial of his motion to reconsider that dismissal.  Defendant argues that the trial court applied the wrong standard of review and therefore erred when it dismissed defendant's postconviction petition during the first stage of the proceedings.  Although the trial court applied the correct standard, we reverse the trial court's decision and remand this cause for second-stage proceedings, because we hold that the court reached the wrong conclusion.

I.  FACTS

Because the facts of this case have been set forth in great detail in 
People v. Dominguez
, 331 Ill. App. 3d 1006, 1008-13 (2002), this court's decision on defendant's direct appeal of his conviction and sentence, they will not be set forth here.  What follows is this case's relevant procedural history.

After this court affirmed defendant's conviction and sentence (
Dominguez
, 331 Ill. App. 3d at 1017), defendant, with the assistance of retained counsel, filed a timely postconviction petition on June 5, 2003.  Specifically, the petition claimed that defendant was denied effective assistance of counsel because his trial counsel (1) failed to tender to the trial court or recommend to defendant that the jury be offered a lesser included offense instruction of involuntary manslaughter; (2) failed to have the alleged murder weapon independently examined; (3) failed to use an interpreter when discussing with defendant the possibility of tendering the lesser included offense instruction; and (4) failed to investigate defendant's mental health.  Additionally, the petition claimed that defendant was denied a fair trial because the trial court did not issue 
sua sponte
 the lesser included offense instruction, and that the State violated its obligation under 
Brady v. Maryland
, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), by not disclosing that defendant was being medicated.  

On August 5, 2003, the trial court, in a written order, summarily dismissed the petition as frivolous and patently without merit.  Specifically, the trial court ruled that defendant's trial counsel was not ineffective because (1) the failure to tender the lesser included offense instruction was the result of an "all-or-nothing" trial strategy decided upon by defendant and his counsel; (2) the failure to have the gun independently examined was a matter of trial strategy, which was not called into doubt by the record or by the submission of affidavits from any potential witnesses or an explanation of the significance of their testimony; (3) the alleged failure to use an interpreter conflicted with the record and the trial court's own observations of and interaction with defendant, all of which demonstrated that defendant was able to communicate effectively with his attorneys; and (4) the failure to investigate defendant's mental health was not supported by any evidence not already considered by the trial court when it determined that there was no 
bona fide
 doubt about defendant's fitness to stand trial.  Additionally, the trial court ruled that its failure to give the lesser included offense instruction 
sua sponte
 was not erroneous, because one was not tendered.  Finally, the trial court ruled that defendant's claim that the State violated its obligation under 
Brady v. Maryland
 lacked merit because there was no evidence in the record, or affidavit stating, that defendant was unaware that he was being medicated or that he could not remember being given drugs.  To the contrary, the court found, defendant identified the drugs he ingested and detailed their effects.  

After the trial court dismissed defendant's postconviction petition, defendant, on August 27, 2003, filed a 
pro se
 notice of appeal from that dismissal.  On September 4, 2003, defendant, with the assistance of counsel, moved to withdraw his 
pro se
 notice of appeal, filed a new notice of appeal (amended on September 17, 2003), and filed a motion to reconsider the dismissal of his postconviction petition.  The motion to reconsider asserted that the trial court had applied the wrong standard and sought to incorporate into the postconviction petition those  Department of Corrections medical records that would support defendant's fitness claim.  Attached to the motion were affidavits from defendant's trial counsel, stating, 
inter alia
, that an interpreter was not used to advise defendant of his right to a lesser included offense instruction, and from defendant's priest, stating concerns that defendant went to trial while unable to understand his lawyer, who ignored those concerns.  

On October 1, 2003, after brief arguments, the trial court denied defendant's request for a hearing on his motion to reconsider.  During the arguments, the trial court expressed serious doubt as to whether it could hear the motion to reconsider, because the cause remained within the 90-day period allowed for the trial court to review the petition without input from any party.  On October 24, 2003, defendant filed a timely notice of appeal from the trial court's refusal to hear the motion.

II.  JURISDICTION

Before proceeding to the merits of this case, there are jurisdictional issues that must be resolved.  
An appellate court is under a duty to consider its jurisdiction and to dismiss an appeal if jurisdiction is lacking.  
Ferguson v. Riverside Medical Center
, 111 Ill. 2d 436, 440 (1985)
; 
Gilkey v. Scholl
, 229 Ill. App. 3d 989, 992 (1992)
. 
 
 Even if the issue is not raised by the parties, this court must determine the question of its jurisdiction (
Carlson v. Powers
, 225 Ill. App. 3d 410, 413 (1992))
 
 prior to deciding the merits of an appeal (
Steel City Bank v. Village of Orland Hills
, 224 Ill. App. 3d 412, 416 (1991))
. 
 In this case, the primary issue is whether 
the trial court had jurisdiction over the motion to reconsider the dismissal of the postconviction petition.  

This court lacks jurisdiction over, and cannot consider the parties' arguments on the merits of, an appeal taken from a trial court order when the trial court itself lacked jurisdiction to entertain the motion giving rise to the order being appealed.  
Village of Glenview v. Buschelman
, 296 Ill. App. 3d 35, 42 (1998).  In this case, the trial court expressed serious doubt as to whether it could hear the motion to reconsider because the cause remained within the 90-day period allowed for the trial court to review the petition without input from any party.  The trial court, however, appears to have miscounted.  Although the trial court has 90 days from the filing of a postconviction petition in which to review the petition without input from any party (725 ILCS 5/122--2.1(a) (West 2002)), that period had expired by the time defendant filed his motion to reconsider.  Defendant's September 4, 2003, motion to reconsider was filed 91 days after defendant's June 5, 2003, postconviction petition.  We note that generally there is no bar to a defendant filing a timely motion to reconsider the summary dismissal of a postconviction petition.  The summary dismissal of a postconviction petition is a final judgment in a civil proceeding.  725 ILCS 5/122--2.1(a)(2) (West 2002); 
People v. Wilson
, 37 Ill. 2d 617, 619-20 (1967).  A party may, within 30 days of the entry of a final judgment in a civil case, move the court to reconsider that judgment.  735 ILCS 5/2--1203(a) (West 2002); see also 
In re J.D.
, 317 Ill. App. 3d 445, 448 (2000).  Indeed, defendants have exercised that right.  See, 
e.g.
, 
People v. Newbolds
, 352 Ill. App. 3d 678, 679 (2004) (noting that the defendant filed a motion to reconsider the first-stage dismissal of the postconviction petition).  Therefore, defendant's motion to reconsider, which was filed 30 days after the entry of the order dismissing the postconviction petition, was both timely and proper.  Consequently, this court does have jurisdiction over defendant's appeal from the trial court's refusal to hear his motion to reconsider.

As a result of defendant's timely and proper motion to reconsider, however, the notice of appeal from the dismissal of defendant's postconviction petition, and the amended notice, are stricken.  The final judgment dismissing a postconviction petition must be reviewed in accordance with the rules of the supreme court.  725 ILCS 5/122--7 (West 2002).  According to the supreme court rules, an appeal from a final judgment is perfected only through the filing of a notice of appeal.  188 Ill. 2d R. 606(a); see also 134 Ill. 2d R. 651(a).  Furthermore, although postconviction proceedings are civil proceedings (
Wilson
, 37 Ill. 2d at 619-20), appeals therefrom shall be in accordance with the rules governing criminal appeals (134 Ill. 2d R. 651(d)).  Consequently, the effect of defendant's filing of his motion to reconsider the dismissal of his postconviction petition is that the notice of appeal from that same dismissal order, and the amendment of that notice, are premature and must be stricken.  188 Ill. 2d R. 606(b); 
cf.
 
People v. Clark
, 314 Ill. App. 3d 181 (2000).  Because defendant did not file a new notice of appeal from that dismissal, this court lacks jurisdiction over the appeal therefrom.  See 
People v. Miraglia
, 323 Ill. App. 3d 199, 204, 206 (2001).  Therefore, appeal No. 2--03--1016, the appeal from the August 5, 2003, dismissal of defendant's postconviction petition, is dismissed.

Nonetheless, in appeal No. 2--03--1212, this court may decide whether the trial court applied the wrong standard when it dismissed defendant's postconviction petition.  Although the timely notice of appeal specifically assigns error solely in the October 1, 2003, refusal to hear defendant's motion to reconsider, the dismissal of the postconviction petition was a step within the procedural progression leading up to the refusal to hear the motion to reconsider.  Hence, the dismissal order is reviewable.  
Burtell v. First Charter Service Corp.
, 76 Ill. 2d 427, 435-36 (1979); see also 
People v. Jones
, 207 Ill. 2d 122, 138 (2003). 

III.  THE PROPER STANDARD FOR SUMMARY DISMISSAL AT THE FIRST STAGE OF A POSTCONVICTION PROCEEDING

Although the trial court explicitly dismissed defendant's postconviction petition as frivolous and patently without merit, defendant contends that the trial court applied the wrong standard to the dismissal.  In support of his contention, defendant argues that the trial court explicitly stated the standard applicable to second-stage review of a postconviction petition, while inexplicably omitting a statement of the standard applicable to first-stage review.  Specifically, defendant notes that the trial court wrote: "To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of a federal or state constitutional right in the proceedings that produced the judgment being challenged"; and, defendant notes, the trial court failed to cite the "gist of a constitutional claim" standard.  

Defendant's contention fails.  The trial court's statement of the "substantial deprivation" standard was nothing more than use of the "general terminology that is common in post-conviction proceedings."  
People v. Gaultney
, 174 Ill. 2d 410, 422 (1996).  The trial court clearly expressed: "At this stage, the court must determine, without input from the State, whether the petition is frivolous or is patently without merit."  The court later stated that it could summarily dismiss only frivolous claims that are patently without merit, and then expressly did so.  There is nothing that requires the trial court to expressly state the "gist" standard.

Nonetheless, defendant avers that he has set forth the gist of a constitutional claim, which he asserts is a low threshold where the allegations in the petition are taken as true and are construed liberally.  In his motion to reconsider, defendant stated that the only issue that a court should address at the first stage is whether the gist of a constitutional claim has been presented, and he assigned error in the trial court's making findings of fact based on the record.  We find that the standard presented by defendant limits the trial court's review of a postconviction petition to a degree that is not contemplated by the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122--1 
et seq.
 (West 2002)), because it restricts the court's review to the four corners of the petition. 

At the first stage of a postconviction proceeding in a noncapital case, the trial court, within 90 days of the filing and docketing of a petition, shall review the petition and, in a written order that specifies findings of fact and conclusions of law, dismiss the petition if the court determines that the petition is frivolous or is patently without merit.  725 ILCS 5/122--2.1(a)(2) (West 2002).  Because more often than not the defendant will be filing the petition 
pro se
 (see 
People v. Porter
, 122 Ill. 2d 64, 70-75 (1988)), the defendant's burden at the first stage is lower than at stages later in the proceedings, when the defendant is assisted by counsel.  The purpose is to give indigents a meaningful opportunity to be heard.  See 
Porter
, 122 Ill. 2d at 73.
  Consequently, the supreme court has declared that the Act requires that a 
pro se
 petition present only the gist of a constitutional claim.  
People v. Boclair
, 202 Ill. 2d 89, 99 (2002). 
 The "gist" standard is a "low threshold."  
Gaultney
, 174 Ill. 2d at 418.  Although a "gist" is something more than a bare allegation of a deprivation of a constitutional right (
People v. Prier
, 245 Ill. App. 3d 1037, 1040 (1993)), it is something less than a completely pled or fully stated claim (
People v Edwards
, 197 Ill. 2d 239,  245 (2001)).  Therefore, to set forth the "gist" of a constitutional claim, the 
pro se
 defendant " 'need only present a limited amount of detail.' "  
Edwards
, 197 Ill. 2d at 245, quoting 
Gaultney
, 174 Ill. 2d at 418.
  The defendant need not construct legal arguments or cite to legal authority (
Porter
, 122 Ill. 2d at 74); nor must the defendant plead sufficient facts from which the trial court could find a valid claim of deprivation of a constitutional right (
Edwards
, 197 Ill. 2d at 244-45). 
 

Notably, the "gist" standard was developed in cases involving 
pro se
 postconviction petitions, with this premise in mind:

" ' "While it is obvious that counsel should be better able to more artfully draft a petition than an indigent petitioner unschooled in legal drafting, it is certainly not clear that an indigent petitioner could not present the gist of his claim so that the trial court could make an initial determination as to whether *** the claim is frivolous." '  
People v. Baugh
 (1985), 132 Ill. App. 3d 713, 717."  
Porter
, 122 Ill. 2d at 74.

This case, however, does not involve a 
pro se
 petition, because defendant's petition and motion to reconsider were filed by and through his attorneys.  This circumstance raises the question of whether a defendant assisted by counsel must state more than merely the gist of a constitutional claim.  The supreme court, in 
People v. Rogers
, 197 Ill. 2d 216, 221 (2001), did not mention the "gist" standard when the appeal involved a postconviction petition that had been filed with the assistance of counsel.  Instead, the court stated: "The petition must enunciate clearly 'the respects in which petitioner's constitutional rights were violated' and must include 'affidavits, records, or other evidence supporting its allegations' or an explanation why such evidence is not attached."  
Rogers
, 197 Ill. 2d at 221, citing 725 ILCS 5/122--2 (West 1998).  On the grounds that the record from the original trial proceedings contradicted the defendant's allegations of ineffective trial counsel and that no legal authority existed for the defendant's other allegations, the court affirmed the trial court's first-stage dismissal of the petition as patently without merit.  
Rogers
, 197 Ill. 2d at 222-24.  

Similarly, in 
People v. Paleologos
, 345 Ill. App. 3d 700 (2003), the First District considered whether the record from the original trial proceedings contradicted the allegations in the defendant's petition that was filed with the assistance of counsel.  The court found that the petition, which was dismissed at the first stage of the postconviction proceedings, contained allegations that were not rebutted by the record.  
Paleologos
, 345 Ill. App. 3d at 706.  Initially, the court did not mention the "gist" standard, stating: "Based on the first-stage procedural posture of the instant case, the relevant question is, first, whether the petition alleges a constitutional deprivation, and, second, whether the petition was substantively rebutted by the record, rendering it frivolous or patently without merit."  
Paleologos
, 345 Ill. App. 3d at 704.  The court later reiterated this inquiry, stating: "consistent with the terms of the Act and the purpose of the first stage, we address whether the petition alleges a constitutional deprivation unrebutted by the record, rendering the petition neither frivolous nor patently without merit."  
Paleologos
, 345 Ill. App. 3d at 704-05.  Ultimately, however, the court acknowledged the "gist" standard, stating: "If any one allegation states the gist of a constitutional deprivation, the entire petition should be docketed for second-stage review pursuant to sections 122-4 through 122-6 of the Act."  
Paleologos
, 345 Ill. App. 3d at 706.  

Despite the failure of the supreme court in 
Rogers
 to apply the "gist" standard, there is no reason to hold petitions filed with the assistance of counsel to a higher standard than those filed 
pro se
.  Although courts generally construe the allegations made in a 
pro se
 filing more liberally than the allegations made in a filing prepared with the assistance of counsel, the requisite contents of the filing do not change.  
Turner-El v. West
, 349 Ill. App. 3d 475, 479 (2004).  Thus, regardless whether a postconviction petition is filed 
pro se
 or with the assistance of counsel, the petition must, at a minimum, state the gist of a constitutional claim.  The problem in this case, however, is that defendant proposes that the only inquiry the court may make is whether the gist of a constitutional claim has been stated, without inquiry into the record.  Such a proposition is contrary to the purpose of section 122--2.1(a)(2) of the Act. 

The purpose of section 122--2.1(a)(2) of the Act is to permit trial courts to dismiss petitions that are frivolous or patently without merit.  725 ILCS 5/122--2.1(a)(2) (West 2002).  To make this determination, the trial court "may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding."  725 ILCS 5/122--2.1(c) (West 2002); 
Porter
, 122 Ill. 2d at 76.  Thus, the trial court's review of the petition is limited to the contents of the petition and the records of the relevant proceedings.  The trial court may not accept input from either the defendant or the State (
Gaultney
, 174 Ill. 2d at 420) and may not engage in any review of matters beyond the allegations of the petition (
Boclair
, 202 Ill. 2d at 99).  

Under the "gist" standard, the supreme court has placed other limitations upon the trial court.  Defendant, however, mistakenly relies upon them.  First, in his motion to reconsider, defendant relies upon 
People v. Boclair
, 202 Ill. 2d at 99, for the proposition that the trial court may not make findings of fact.  Citing 
People v. Coleman
, 183 Ill. 2d 366 (1998), 
Boclair
 states: "The court is further foreclosed from engaging in any fact finding or any review of matters beyond the allegations of the petition."  
Boclair
, 202 Ill. 2d at 99.  Understood as defendant would prefer, this statement would be contrary to the mandate of section 122--2.1(a)(2) of the Act, which requires the trial court to specify its findings of fact.  When understood within the context of 
Coleman
, however, its meaning is clear.  The supreme court in 
Coleman
, 183 Ill. 2d at 380-81, while discussing the restrictions on a trial court that conducts a dismissal hearing during the second stage of postconviction proceedings, stated: "[O]ur past holdings have foreclosed the circuit court from engaging in any fact-finding at a dismissal hearing because all well-pleaded facts are to be taken as true at this point in the proceeding."  Thus, it is clear that, during the first stage, the trial court may not engage in fact-finding (such as hearing witnesses), but that foreclosure does not prevent the trial court at the first stage from making findings of fact based only on the petition and the records of the relevant proceedings.  In fact, the supreme court already has rejected the contention that the trial court's review is limited to review of the petition alone.  
Porter
, 122 Ill. 2d at 75-76.  

Second, defendant relies upon 
People v. Edwards
, 197 Ill. 2d at 244, for the proposition that the trial court must take as true the allegations in the petition.  
Edwards
 states: "A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' "  
Edwards
, 197 Ill. 2d at 244, quoting 
Gaultney
, 174 Ill. 2d at 418.  Taken literally, this statement would nullify section 122--2.1(c) of the Act, which permits the trial court at the first stage to examine the records of the relevant proceedings.  We believe that the supreme court did not intend for its statement to have such an effect.  In fact, the supreme court itself examined the record in 
Edwards
.  The court stated:

"Defendant in the case at bar alleges that he repeatedly asked his attorney to file an appeal but that she had 'taken it or decided for herself not to file' one.  For purposes of deciding whether defendant's petition is frivolous, we must take these allegations as true.  [Citation.]  There is nothing of record which indicates that defendant's counsel reviewed the plea proceedings for error or consulted with defendant regarding grounds for an appeal before deciding not to file the motion to withdraw the guilty plea."  
Edwards
, 197 Ill. 2d at 253-54.

Presumably, the result in 
Edwards
 would have been different if the record had the opposite indication.  Therefore, the supreme court must have intended that only those allegations that are not rebutted by the record should be liberally construed and taken as true.  Such an understanding is consistent with the Act and the supreme court's rulings, as it would be unreasonable and inefficient if a defendant's misrepresentation of the facts could permit a petition to proceed to the second stage when the defendant's rendition of the facts is rebutted by the record, thereby rendering the petition frivolous or patently without merit.

The vague and general terms sometimes used in the supreme court's rulings and the cases interpreting them have caused confusion regarding the proper construction of the standard for first-stage review of a postconviction petition.  Indeed, this court has constructed the standard in many different ways.  See, 
e.g.
, 
People v. Rivera
, 342 Ill. App. 3d 547, 549 (2003) ("[A] petition need only state the 'gist' of a constitutional claim"); 
People v. Stivers
, 338 Ill. App. 3d 262, 263-64 (2003) ("The court, without input from the State, must assess in the summary review stage whether the petition's allegations, liberally construed and taken as true, set forth a constitutional claim for relief"); 
People v. Crane
, 333 Ill. App. 3d 768, 773 (2002) ("At the preliminary stage, a petition need present only the gist of a substantial claim that the defendant's constitutional rights were violated").  Consequently, this court is in need of a more succinct and accurate statement of the standard.

In constructing a more succinct and accurate standard, we note that a petition may state the "gist" of a constitutional claim, but that claim is not necessarily nonfrivolous or meritorious.  See, 
e.g.
, 
People v. Shevock
, 353 Ill. App. 3d 361, 365 (2004), quoting 
Edwards
, 197 Ill. 2d at 257 (finding that the defendant's petition had stated the "gist" of a claim by alleging at least one factual element, but affirming summary dismissal on the grounds that the petition was " 'so completely lacking in substance that it [was] frivolous [and] patently without merit' " and "so thoroughly sanitized of facts that there [were] none to take as true").  Although defendant properly stated that "the question is, 'Did the Petitioner state the gist of a constitutional claim in his post-conviction petition?' " that question is merely the first one.  The second question is whether the allegations in the petition are rebutted by the record.  Hence, the statement of a "gist" of a constitutional claim may be sufficient to survive summary dismissal at the first stage of a postconviction proceeding, but the claim does not necessarily survive that fate once the record is taken into consideration.  After all, the ultimate question is not merely whether the "gist" of a constitutional claim has been stated, but rather whether that claim is frivolous or patently without merit.  Therefore, this court finds that, modified slightly, the First District's construction of the standard applicable to the review of a petition at the first stage of postconviction proceedings is workable for both 
pro se
 defendants and defendants represented by counsel, and is consistent with the Act and the principles and restraints espoused by the supreme court: whether, after the court takes as true and liberally construes all the allegations not rebutted by the record, the petition states the gist of a constitutional claim, thereby rendering the petition neither frivolous nor patently without merit.  See 
Paleologos
, 345 Ill. App. 3d at 704-05; see also 
People v. Deloney
, 341 Ill. App. 3d 621, 627 (2003) (emphasis omitted) ("[I]n order to withstand summary dismissal, defendant's petition must contain a 'simple statement which presents the gist of a claim for relief which is meritorious when considered in view of the record of the trial court proceedings' "), quoting 
People v. Dredge
, 148 Ill. App. 3d 911, 913 (1986).  

IV.  REVIEW OF DEFENDANT'S CLAIMS

Keeping in mind this construction of the standard for summary dismissal of a petition at the first stage of postconviction proceedings, this court must review defendant's claims.  We review 
de novo
 the summary dismissal of a postconviction petition.  
Coleman
, 183 Ill. 2d at 389.  If any one claim states the gist of a constitutional deprivation, the entire petition should be docketed for proceedings pursuant to sections 122--4 through 122--6 of the Act.  
People v. Rivera
, 198 Ill. 2d 364, 370-71 (2002).  

In this case, at least one of defendant's claims states the gist of a constitutional deprivation.  Defendant claims that he received ineffective assistance of counsel when his trial attorney failed to tender the lesser included offense instruction of involuntary manslaughter.  Defendant's allegations in support of this claim are not rebutted by the record for the purposes of first-stage review under the Act.  

To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficiency prejudiced the defense.  
Strickland v. Washington
, 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984); see also 
People v. Chandler
, 129 Ill. 2d 233, 242 (1989).  The question, therefore, is whether defendant's trial counsel's allegedly deficient performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  
Strickland
, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.  More specifically, however, the question in this case is whether defendant stated the claim with allegations that are not rebutted by the record.  

In this case, defendant alleges that his trial counsel's theory of defense was that defendant's act of killing his wife by pointing a loaded gun at her was accidental, or at most reckless, but not intentional or knowing.  Given such a theory, defendant alleges, effective counsel would have either recommended or tendered a lesser included offense instruction of involuntary manslaughter, and the failure to have done so fell below the objective standard of reasonableness, the result of which prejudiced defendant.  

The record in this case does not rebut defendant's allegation that his trial counsel presented a theory of recklessness; nor does the record rebut defendant's allegation that his trial counsel failed to tender the lesser included offense instruction.  The issue here is whether defendant's counsel recommended to defendant that a lesser included offense instruction be offered.  If such a recommendation occurred, then defendant's claim fails.

An all-or-nothing strategy is not a viable strategy, except when a defendant consents to it.  
People v. Lemke
, 349 Ill. App. 3d 391, 401 (2004).  A defendant's consent to an all-or-nothing strategy invokes the doctrine of invited error.  Under the doctrine of invited error, a defendant may not request that counsel proceed in one manner at trial and then later contend on appeal that trial counsel acted in error.  
People v. Villarreal
, 198 Ill. 2d 209, 227-28 (2001).  In this case, if defendant's counsel recommended to defendant that an involuntary manslaughter instruction be offered, and defendant refused that recommendation, then defendant invited the error that occurred at trial by virtue of not making the involuntary manslaughter instruction available to the jury.  However, the record supports defendant's allegation.  At defendant's fitness hearing, defendant's counsel stated: "I don't ever recall making any recommendation with regards to a lesser included instruction."  Additionally, regarding who made the ultimate decision whether to include the involuntary manslaughter instruction, defendant's counsel stated: "[I]t would have been my ultimate decision, I guess, not to do that because I didn't recommend it and he didn't say that he wanted it."  Consequently, the record does not rebut defendant's allegation.  As trial counsel allegedly pursued an all-or-nothing strategy without defendant's consent, and as there is a reasonable probability that a different strategy would have produced a different result, defendant has stated the gist of a constitutional claim.

We note that this conclusion creates tension with this court's decision on defendant's direct appeal, in which this court affirmed the trial court's denial of defendant's posttrial motion that raised the same claim.  
Dominguez
, 331 Ill. App. 3d at 1013-15.  This tension is a result of this court's refusal to allow summary dismissal of a postconviction petition on the ground of 
res judicata
(footnote: 1) (
People v. Murray
, 351 Ill. App. 3d 219, 221 (2004)), even though this court's actions in this case may be examined at this stage (725 ILCS 5/122--2.1(c) (West 2002)).  Even upon examination of this court's decision on defendant's direct appeal, this tension remains because of the different standards applicable at the different stages of this case.  To defendant's direct appeal, this court applied the manifest-weight-of-the evidence standard, through which this court gave deference to the trial court's determinations.  Here, the standard is 
de novo
, so the trial court receives no deference, and the "gist" standard is low, so defendant receives much deference.  As a result, many of the trial court's credibility and factual determinations that this court used to affirm the trial court on direct appeal are inappropriate at this stage.  For example, the trial court's determinations about defendant's language ability may not be considered, because neither this court nor the trial court may make such determinations at this stage.  See 
People v. Broughton
, 344 Ill. App. 3d 232, 236 (2003).  

Defendant's language ability is critical to a determination in this case because a legally valid decision to forgo a lesser included offense instruction must be made knowingly and intelligently by a defendant, who ultimately has control over the decision.  See 
People v. Segoviano
, 189 Ill. 2d 228, 240 (2000); 
People v. Brocksmith
, 162 Ill. 2d 224, 229 (1994); 
People v. DePaolo
, 317 Ill. App. 3d 301, 310-11 (2000).  Here, the extent to which defendant can understand English has been, and remains, a disputed question of fact.  Defendant, of course, alleges that he does not understand English well enough to have understood the concept of involuntary manslaughter.  In general, however, a defendant's allegations must be supported by "affidavits, records, or other evidence" attached to the petition (725 ILCS 5/122--2 (West 2002)), and, pursuant to the embattled holding of 
People v. Collins
, 202 Ill. 2d 59, 66 (2002), failure either to attach such evidence or to explain its absence justifies summary dismissal.  In this case, defendant failed to attach the requisite evidence to his petition.  His motion to reconsider, however, contains affidavits that lend support to his
 claim.  A motion to reconsider invokes the sound discretion of the trial court.  
Williams v. Covenant Medical Center
, 316 Ill. App. 3d 682, 693 (2000).  However, the trial court in this case failed to exercise any discretion over defendant's motion to reconsider because of its mistaken conclusion that the motion was premature.  Consequently, there is error.  See 
Avery v. Garbutt
, 19 Ill. App. 3d 1001, 1003-04 (1974) ("there is error when a trial court refuses to exercise discretion in the erroneous belief that it had no discretion as to the question presented").  Under the circumstances, this court may accept the affidavits, and we do so without prejudicing the State, as the affidavits were already in the record of the proceedings on defendant's posttrial motion.  
Cf.
 
Luciani v. Bestor
, 106 Ill. App. 3d 878, 888-89 (1982) (pursuant to Supreme Court Rule 366(a)(1) (155 Ill. 2d R. 366(a)(1)), courts of review may 
sua
  
sponte
 permit amendment of pleadings to conform with proof, if there is no prejudice).  In this situation, the failure to comply with such a technical rule should not cause defendant's postconviction petition to be summarily dismissed.  After all, this court has noted: "The trend of recent cases such as 
Boclair
 and 
Edwards
 is to curtail trial courts' authority to dispose of postconviction petitions at the first stage.  Pleading niceties and procedural technicalities should not be considered, and early dismissal is warranted only where a petition's allegations clearly lack substantive merit."  
Stivers
, 338 Ill. App. 3d at 264.  

The affidavits provide evidence that defendant did not understand his attorneys and that his attorneys did not use an interpreter to advise defendant of his right to a jury instruction on involuntary manslaughter.  In its dismissal order, the trial court held that defendant's alleged inability to understand English conflicted with the record and with the court's own observations and interactions with defendant.  The court erred in its decision.  First, as the court stated, the record merely conflicts with defendant's allegations.  Conflict alone, however, is not enough to refute allegations at this stage.  Moreover, the court's own observations of defendant are not proper grounds for dismissal at this stage, and the court's own interactions with defendant are proper grounds only if the record demonstrates that those interactions refute the allegations.  In this case, the record does not.  From defendant's arraignment through his trial, the record reflects that defendant made three statements: "Yes"; "Yeah, a little bit"; and "I don't wish to testify."  The only statement defendant made without the assistance of an interpreter was "Yeah, a little bit," when asked if he understood what was happening.  The trial court, however, decided that "a little bit" was not enough and ordered an interpreter.  Certainly, this interaction is insufficient to rebut defendant's allegations and, at this stage, is insufficient to demonstrate that defendant had enough understanding to exercise control over the decision to exclude the involuntary manslaughter instruction.  Therefore, there is no reason to dismiss defendant's petition at this stage.

V.  CONCLUSION

Appeal No. 2--03--1016, the appeal from the August 5, 2003, dismissal of defendant's postconviction petition, is dismissed.  In appeal No. 2--03--1212, defendant has stated the gist of a constitutional claim, based on the allegations in his petition that are not rebutted by the record, that counsel was ineffective for not tendering or recommending an involuntary manslaughter instruction.  Therefore, defendant's petition is not frivolous or patently without merit.  The trial court's order in appeal No. 2--03--1212 is hereby  reversed, and this cause is remanded for second-stage proceedings. 

No. 2--03--1016, Appeal dismissed.

No. 2--03--1212, Reversed and remanded.

O'MALLEY, P.J., and BYRNE, J., concur.

FOOTNOTES
1:
This statement is not meant to express this court's opinion as to the merits of a 
res judicata
 analysis of this case.  Rather, we make this statement solely for the purpose of acknowledging that, one way or the other, a 
res judicata
 analysis of this case may resolve the tension that exists between our decision here and our decision on defendant's direct appeal.  That analysis, however, is reserved for proceedings during the second stage.