2023 IL App (2d) 220458-U
No. 2-22-0458
Order filed October 30, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09-CF-164 |
| MARC J. WACHTER, | ) ) ) | Honorable John F.McAdams, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err by summarily denying defendant's postconviction petition at the first stage.

¶ 2    Defendant, Marc J. Wachter, appeals from the first-stage dismissal of his *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He contends that his petition stated the gist of a claim for ineffective assistance of counsel based on counsel's failure to request a fitness hearing. We affirm.

¶ 3                                    I.  BACKGROUND

¶ 4    In 2009, defendant was charged with seven counts of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2008)) and three counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(b) (West 2008)) relating to the alleged sexual abuse and assault of his stepdaughter, S.L.

¶ 5    During pretrial proceedings, defense counsel requested Kane County Diagnostic Center (KCDC) complete psychological and *Miranda*-waiver evaluations of defendant. Defense counsel was due to receive the results of these evaluations before a March 12 hearing. However, before this hearing, defendant entered a fully negotiated plea wherein he agreed to plead guilty to two counts of predatory criminal sexual assault and, in exchange, he would be sentenced to two consecutive terms of 10 years' imprisonment. Additionally, this sentence was to run consecutive to defendant's 10-year term of imprisonment previously imposed in De Kalb County case No. 09-CF-250. Defendant's remaining charges were to be dismissed.

¶ 6    During the plea hearing, defendant was fully admonished of his rights pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997). Defendant indicated that he had no difficult reading or understanding English, had three years of post-secondary education, was taking only his prescribed medication, and had sufficient time to speak with his attorney regarding the plea agreement. The circuit court then explained the charges and potential sentencing range. Defendant stated multiple times that he understood what was being said to him and, with one exception, did not have any questions. Defendant's only question related to his police interrogation and the promises of probation that were made to him by police during the investigation. Defendant noted that he understood that the plea proceedings were different than the police investigation and that promises had not been made to him outside of the investigation. Despite this concern, defendant still stated that he wished to plead guilty to have a chance at getting his life back.

¶ 7 The State then provided a factual basis, to which defense counsel stipulated. Defendant formally pleaded guilty, and the circuit court accepted the plea, finding (1) there was a sufficient factual basis, and (2) defendant knowingly and voluntarily entered his plea. The court then entered the agreed-upon sentences of two consecutive 10-year terms of imprisonment and ordered defendant's sentences to run consecutive to the sentence imposed in the De Kalb County case. The court admonished defendant pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001). Thereafter, the court ordered that since defendant pleaded guilty the evaluations previously ordered from KCDC need not be completed.

¶ 8 More than 11 years later, defendant filed a *pro se* postconviction petition, alleging: (1) since his sentencing, he was diagnosed with autism spectrum disorder (ASD) which impacted his ability to communicate effectively about his case, assist in his own defense, and understand the guilty plea procedure, such that his guilty plea violated due process; (2) during his interview with police, he was "cue bound," denied counsel, and denied medication, such that he would agree with any police statements to secure his release; (3) the court improperly refused to withdraw defendant's guilty plea after inciting "a state of ASD" and after it was informed that defendant was innocent; and (4) his attorney was ineffective for failing to follow through on defendant's requests for a competency hearing. Defendant did not attach any supporting documentation to his petition.

¶ 9 On January 5, 2022, the court summarily dismissed defendant's petition, finding both that it was untimely and that the issues raised were patently without merit. Specifically, the court noted that defendant never asserted, at the time of the plea, that he was innocent or did not understand what was occurring at the plea proceedings. Instead, defendant indicated that he understood the proceedings, had some college education, and wished to plead guilty because that was his opportunity to "get [his] life back, maybe if [he] live[s] that long." Thereafter, on February 3, 2022

(file stamped on February 14, 2022), defendant filed a timely motion to reconsider alleging that a fair review of the petition was not conducted by the court considering the pleading standard and that ASD is an all-encompassing communication disorder that tainted all of defendant's interactions with the court. Defendant did not attach any documents in support of his motion to reconsider.

¶ 10　　On March 31, 2022, defendant filed a motion for a status update on his motion to reconsider. Nearly two months later, he filed a notice of appeal with various *pro se* pleadings and exhibits appended. Specifically, defendant included: a statement addressing culpable negligence; exhibits explaining ASD; a pleading stating that he had undergone a partial evaluation by KCDC and was never given the results; allegations that defendant was rushed into a guilty plea by his defense attorney; and copies of his prison medical records diagnosing him with ASD, post-traumatic stress disorder, and unspecified anxiety disorder. Defendant alleged that he began the postconviction process as soon as he was diagnosed with ASD in 2020. He also included the order from his De Kalb County case and asserted in his culpable-negligence statement that his identical postconviction petition in that case was advanced to the second stage.

¶ 11　　On June 6, 2022, defendant filed a motion demanding a response to his motion to reconsider and reiterating that his De Kalb County petition advanced to the second stage. On July 18, 2022, the Office of the State Appellate Defender, which was appointed to represent defendant, filed an unopposed motion to dismiss the appeal as premature.

¶ 12　　Three days later, defendant moved to supplement the motion to reconsider. Therein, defendant challenged the accuracy of the court transcripts, alleged a conspiracy by several court officials to commit fraud, reiterated that he was rushed and forced into a guilty plea, asserted that he was partially tested by KCDC but the testing was not completed and any results were withheld

from him, appended an article about ASD, and attached additional medical records. That same day, we granted appellate counsel's unopposed motion to dismiss the appeal as premature, recognizing that defendant filed a timely motion to reconsider that was still pending.

¶ 13    On September 2, 2022, the circuit court denied defendant's motion to reconsider the summary dismissal of his postconviction petition, finding that defendant's allegations were "meritless legal theories as they are completely contradicted by the record." Thereafter, we allowed defendant's motion for leave to file a late notice of appeal.

¶ 14                                   II. ANALYSIS

¶ 15    On appeal, defendant contends that the circuit court erred in not granting his post-conviction petition alleging ineffective assistance of counsel for failing to request a fitness hearing before defendant pleaded guilty. Defendant makes no argument that the claims in his original postconviction petition were sufficient to survive summary dismissal; instead, defendant recognizes that the additional documentation was filed after the original petition but before a final judgment. As such, defendant argues that, since the court received the supporting documentation and a motion to supplement the motion to reconsider all before the court ruled on the motion to reconsider, we should either address the merits of the petition (including all the supplemental materials) or remand this case to the circuit court to consider the additional materials supporting defendant's petition. For the following reasons, we conclude that remand to the circuit court is unnecessary.

¶ 16    The Act allows a defendant to collaterally attack his conviction if it resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2022); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage of postconviction proceedings, the circuit court reviews the petition independently and determines whether the petition is frivolous or patently without

merit. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 27. In other words, the court must determine whether the petition has any arguable basis in law or fact or whether the petition relies on an indisputably meritless legal theory or fanciful legal allegations. *People v. Knapp*, 2020 IL 124992, ¶ 45. All well-pleaded allegations in the petition must be taken as true unless positively rebutted by the record. *People v. Robinson*, 2020 IL 123849, ¶ 45. If the petition states the gist of a constitutional claim, it advances to the second stage, at which point the petitioner has the right to counsel. *Id.* Conversely, if the circuit court determines that the petition is frivolous or patently without merit, it may summarily dismiss the petition. *Hodges*, 234 Ill. 2d at 10-11.

¶ 17    If a postconviction petition is summarily dismissed, the defendant may move to reconsider the dismissal within 30 days of the entry of that summary dismissal. *People v. Dominguez*, 366 Ill. App. 3d 468, 472 (2006). This is akin to a motion to reconsider a final judgment in a civil proceeding. *Id.* "[O]ne of the purposes of a motion for reconsideration is to bring to the court's attention newly discovered evidence. If the motion for reconsideration presents new *evidence*, it lies within the trial court's discretion whether to consider the new evidence." (Emphasis added.) (Internal citations omitted). *People v. Coleman*, 2012 IL App (4th) 110463, ¶ 62. However, the circuit court need not consider new *issues* raised in a motion to reconsider. *Id.* ¶¶ 61-62; 725 ILCS 5/122-3 (West 2022) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is [forfeited].").

¶ 18    Regarding motions to reconsider, we review for an abuse of discretion a court's ruling considering additional facts or new arguments; however, "regardless of whether the motion to reconsider presents new facts, we review *de novo* the trial court's application of law to the facts." *In re County Collector of Lake County*, 343 Ill. App. 3d 363, 371 (2003). We also review *de novo*

the dismissal of a postconviction petition without an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 19    The State asserts first that defendant failed to support his *pro se* petition with documentation and that the materials that were submitted were untimely. Defendant acknowledges that his *pro se* petition and the motion to reconsider did not contain any supporting materials. Yet, defendant argues that all the supporting materials were filed before a final judgment was rendered, and, thus, should be considered on appeal. Alternatively, defendant argues that, to the extent that the record is unclear about whether the court was aware of the supplemental materials and the motion to supplement the record, this cause should be remanded for the court to consider whether to accept the additional supporting materials. We conclude that remanding this cause to the circuit court is unnecessary.

¶ 20    It is presumed the circuit court was aware of the contents of the record filed in defendant's case. *People v. Kuhn*, 291 Ill. 154, 164 (1919) (judge is presumed to know the contents of the record filed by the clerk at the direction of the judge); accord *People v. Keener*, 275 Ill. App. 3d 1, 6 (1995) ("Attorneys representing clients before the appellate courts are presumed to have knowledge of the contents of the record."). Moreover, at the time that he denied the motion to reconsider on September 2, 2022, the court here entered an order finding that he conducted "*another* thorough review of the record." Accordingly, we presume the court reviewed the medical records, documentation, and pleadings filed by defendant on May 24, June 6, and July 22, 2022, all of which were included in the record at the time of the court's final order. It was required to address new evidence, not new issues and, based on all the evidence, the court found that defendant's allegations amounted to "meritless legal theories as they are completely contradicted by the record." Accordingly, defendant's request that the case be remanded to the circuit court for

it to determine whether to accept additional materials in support of defendant's petition is not necessary. We now turn to the merits of defendant's petition.

¶ 21     Defendant argues that he was denied the effective assistance of plea counsel, where his attorney was aware that there were questions regarding defendant's mental state but failed to request a fitness hearing before defendant pleaded guilty. Generally, claims of ineffective assistance of counsel in the guilty plea process are analyzed under the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). However, this test must be tailored to the lower pleading standards of first-stage postconviction proceedings. Accordingly, defendant must allege that "(1) counsel's performance *arguably* fell below an objective standard of reasonableness; and (2) the petitioner was *arguably* prejudiced as a result." (Emphasis added.) *People v. Brown*, 236 Ill. 2d 175, 185 (2010).

¶ 22     Regarding the issue of fitness during plea proceedings, due process prohibits courts from accepting guilty pleas from individuals who are unfit. *People v. Bolanos*, 2022 IL App (1st) 200790, ¶ 33. A defendant is presumed to be fit to stand trial, plead guilty, and be sentenced. 725 ILCS 5/104-10 (West 2020). However, if there is a *bona fide* doubt about the defendant's fitness, the circuit court must order a fitness hearing so that the defendant's competency may be resolved before any further action is taken in the case. A defendant is fit to plead guilty, stand trial, or be sentenced if he is able to understand the nature and purpose of the proceedings against him and to assist in his defense. 725 ILCS 5/104-10 (West 2020). To establish that counsel's failure to request a fitness hearing prejudiced a defendant within the meaning of *Strickland* (during first-stage proceedings), a defendant must show that facts existed at the time of trial that arguably would have raised a *bona fide* doubt of his ability "to understand the nature and purpose of the proceedings

against him or to assist in his defense." *People v. Harris*, 206 Ill. 2d 293, 304 (2002) (quoting 725 ILCS 5/104-10 (West 1998)); *Brown*, 236 Ill. 2d at 185.

¶ 23    In this case, none of the attachments to defendant's postconviction petition support his allegation that he suffered from a mental illness that rendered him unfit to plead guilty. Defendant's medical records show that he can communicate well, his thought processes are clear and coherent, his memory is intact, his judgment and insight are adequate, and he is of "average" intelligence. Overall, even considering the low pleading standard and the liberal construction of defendant's claims, these records do not establish any past concerns that defendant's condition prevented him from understanding the purpose and nature of the proceedings or his ability to assist in his own defense.

¶ 24    Additionally, the record shows that defendant was participating in psychological and *Miranda*-waiver evaluations. There was no indication by defense counsel or the court that there was a *bona fide* doubt as to defendant's fitness or that the evaluations were ordered to resolve a potential fitness issue. Merely requesting psychological and *Miranda*-waiver evaluations does not automatically raise concerns regarding defendant's fitness to plead guilty.

¶ 25    At the guilty plea proceedings, defendant was properly medicated (and appears to still be taking the same medication), has some college education, had no issues communicating appropriately with the court, and had ample opportunity to meet with counsel and to continue to meet with counsel. The circuit court thoroughly explained to defendant the charges against him, the possible penalties, the rights he was giving up by pleading guilty, and the terms of his plea agreement. Throughout these admonishments, defendant informed the court that he understood them. Additionally, the record does not reflect that defendant exhibited any irrational, belligerent, or odd behavior in court.

¶ 26    Defendant's words alone are not the only evidence that he understood the proceedings and was able to communicate effectively. Defendant's actions, in the greater context of the case, showed that he was able to communicate effectively. For example, defendant demonstrated his ability to assist in his defense and his understanding of the guilty-plea proceedings by interjecting to note that he was promised probation by police. After a discussion between the court and defendant, he demonstrated his understanding that the investigatory period was separate from the prosecution of his case and that no one had promised him anything in exchange for his plea of guilty during the prosecution of the case. This behavior does not support his position that he was "cue bound" and not able to effectively communicate with the court. This interaction shows, instead, that he was able to understand the proceedings in real time, interject with relevant concerns, and communicate with the court about his concerns and his desired resolution. Defendant was not just mindlessly following along. We thus conclude that defendant failed to state the gist of a constitutional claim that he was unfit to plead guilty.

¶ 27    In so concluding, we note that the decision in *People v. Robinson*, 2020 IL 123849, ¶ 60, which is the primary authority upon which defendant relies, does not require a different result. In that case, the defendant sought leave to file a successive postconviction petition alleging actual innocence. The petition included several affidavits that supported his allegations that he was innocent of the crimes for which he was convicted. *Id.* ¶ 21. On appeal, the appellate court determined that the "evidence in the supporting affidavits was positively rebutted simply because it was contradicted by the evidence presented at trial." *Id.* ¶ 60. Our supreme court found that there was a difference between evidence that conflicts with the trial record and evidence that positively rebuts the record. *Id.* Specifically, the court concluded that, "[f]or new evidence to be positively rebutted, it must be clear from the trial record that no fact finder could ever accept the truth of that

evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible[.]"

¶ 28  Despite the procedural differences between *Robinson* and the present case, defendant's claims of error here were positively rebutted by the record, even under the *Robinson* standard. Determining whether a fitness hearing is necessary because there was a *bona fide* doubt as to defendant's fitness involves a fact-specific inquiry. See *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)) (there are " 'no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated' "). Here, defendant's documents in support of his postconviction petition did not reflect that he (1) had a developmental disability that affected his ability to participate in his own defense and understand what was happening at the time of the plea; or (2) was unable to communicate effectively about his case. Instead, as discussed above, defendant's supporting documents affirmatively demonstrated that, while he was diagnosed with ASD, it did not manifest in ways that left him unable to communicate effectively with the court or defense counsel, and it did not impact his ability to understand the guilty plea proceedings. Simply put, defendant's postconviction filings were positively rebutted by the record.

¶ 29  Defendant has failed to state the gist of a meritorious claim that his counsel's performance fell below an objective standard of reasonableness where counsel did not pursue frivolous competency evaluations. In addition, because neither the record nor defendant's postconviction filings support his claim that facts existed at the time of his guilty plea that arguably would have raised a *bona fide* doubt of his ability to understand the nature and purpose of the proceedings against him or to assist in his defense, defendant has failed to state the gist of a meritorious claim

that counsel's failure to pursue fitness evaluations and request a fitness hearing prejudiced him. *Brown*, 236 Ill. 2d at 185; *Harris*, 206 Ill. 2d at 304. As such, we conclude that (1) defendant has failed to state the gist of a constitutional claim that he received ineffective assistance of counsel, and (2) the circuit court did not err by summarily dismissing defendant's postconviction petition.

¶ 30                                     III. CONCLUSION

¶ 31     For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 32     Affirmed.